IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES GOLBERT, Cook County Public Guardian, on behalf of Stephen W., Carrion C., Careale C., Jamya B., Charlie W., Joshua F., Erica C., Alana M., and Johnnise W., and Named Plaintiffs SKYLAR L., ISAAC D., ARCHIE C., BURL F., STERLING B., AND TYRESE B., on behalf of themselves and a class of others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 18 C 8176 |
| v. | ) ) | Judge John Z. Lee |
| BEVERLY J. WALKER, THE ESTATE OF GEORGE SHELDON, CYNTHIA TATE, BOBBIE GREGG, ARTHUR BISHOP, THE ESTATE OF RICHARD H. CALICA, ERWIN McEWEN, MICHAEL C. JONES, LAUREN WILLIAMS, LINDA STROUD, FELICIA GUEST, D. JEAN ORTEGA-PIRON, DEBRA DYER-WEBSTER, JANET AHERN, MARC D. SMITH, LISE T. SPACAPAN, DENISE GONZALES, DIXIE LEE PETERSON, AND THE ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Charles Golbert, the Acting Cook County Public Guardian, and Plaintiffs Skylar L., Isaac D, Archie C., Burl F., Sterling B., and Tyrese B. (collectively, "Plaintiffs") have filed a four-count complaint on behalf of themselves and a putative class of persons younger than twenty-one years of age, who allegedly were

detained by the Illinois Department of Children and Family Services ("DCFS") in psychiatric hospitals without legal basis. Plaintiffs bring Counts I and II under 42 U.S.C. § 1983 against eighteen directors and current and former employees of DCFS ("the Individual Defendants") for violating their rights under the Fourteenth Amendment. In Counts III and IV, Plaintiffs claim that the Individual Defendants as well as DCFS violated the Rehabilitation Act and the Americans with Disabilities Act ("ADA").

Defendants have moved to dismiss Plaintiffs' complaint. For the reasons stated herein, the motion is denied.

## I.    Background

### A.    Facts[1]

Every year, hundreds of children in the care of DCFS require a period of psychiatric hospitalization to address acute psychiatric symptoms. Am. Compl. ¶¶ 32, 114–15, ECF No. 92.[2] Hospitalization is intended to stabilize the children, develop treatment plans, manage medications, and address acute issues. *Id.* ¶ 161. Hospitalized children should be released once they are stabilized, *id.* ¶ 33, because psychiatric hospitalization imposes "severe constraints on children's ability to maintain a healthy lifestyle": for example, schooling is limited to no more than one hour per day; recreational activities and time outdoors are either non-

---

[1]    The Court "accept[s] as true all well-pleaded facts alleged" in reviewing a motion to dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

[2]    Children enter the care of DCFS after a court has determined that the child is abused, neglected, or otherwise dependent on the State for care. *See* Am. Compl. ¶ 31.

existent or extremely curtailed; phone use is limited to five or ten minutes per day; visits with family are short and usually cannot involve visits from siblings younger than eighteen; and the children are not permitted to maintain contact with friends and relatives using electronic devices. *Id.* ¶¶ 162–64. Psychiatric hospitalization is typically medically necessary for less than two weeks. *Id.* ¶ 161.

Plaintiffs allege that they and the class of children they seek to represent were hospitalized *beyond* medical necessity ("BMN"). *Id.* ¶ 2. In other words, although Plaintiffs were cleared for discharge to a less-restrictive placement, they continued to be held in locked psychiatric wards. *Id.* Plaintiffs assert that DCFS's practice of confining children BMN undermines or eliminates any stability that they gained during their admission, *id.* ¶¶ 4, 167, and subjects them to a dangerous environment where other patients may engage in physically or sexually violent behavior, *id.* ¶ 165.

For example, Plaintiff Alana M. was placed in DCFS's care when she was 13 years old. Her adoptive mother died, and her next-of-kin (her adoptive grandmother) was too sick to care for Alana and, in fact, passed away shortly thereafter. *Id.* ¶¶ 5, 21. When DCFS assumed temporary custody of Alana, she was hospitalized for depression and suicidal ideation. *Id.* ¶ 21. Once Alana was cleared for release, she was supposed to move in with her sister in Indiana. *Id.* ¶ 5. But by the time that placement was approved, Alana had been held BMN for four and a half months, spending her fourteenth birthday in the psychiatric hospital. *Id.* By that point, Alana's doctors determined that her detention BMN

had caused her mental health to deteriorate again—so much so that she could no longer go live with her sister. *Id.* ¶ 21. Instead, Alana was transferred to a residential placement and finally a specialized foster home. *Id.*

Plaintiffs allege that Defendants have known since at least 1988 that DCFS has maintained a "widespread and unnecessary practice" of holding certain children BMN. *Id.* ¶ 6. Yet, Plaintiffs assert, despite having the ability and responsibility to ensure that children medically cleared for discharge were promptly placed in a less-restrictive setting, each Defendant failed to do anything about the problem, thereby violating Plaintiffs' constitutional rights and Defendants' obligations under the ADA and the Rehabilitation Act.

Plaintiffs divide Defendants into several groups based on their responsibilities and authority:

- Current and former Directors or Acting Directors (collectively, the "Director Defendants"), who were responsible for ensuring that "all children in DCFS care or under its guardianship are safe, appropriately placed, and receiv[ing] appropriate and timely care and treatment." *Id.* ¶ 40. The Director Defendants also "had the legal authority to increase"—or to direct their subordinates to increase—"the existing number of residential and other placements, including but not limited to entering into contracts to develop new placements, in order to provide safe and appropriate placements for every child held beyond medical necessity in psychiatric hospitals." *Id.* ¶¶ 41–42.

- Associate Deputy Directors for Placement Resources (collectively, the "ADDPR Defendants"), who "were responsible for supervising DCFS's Central Matching Unit and, in that capacity, for ensuring that every child had a therapeutically appropriate placement upon discharge from a psychiatric hospital." *Id.* ¶ 51. The ADDPR Defendants "had the legal authority to develop more placement capacity in existing placements and develop new placement resources, including residential placements, to ensure children did not stay beyond medical necessity in psychiatric hospitals," as well

as "the ability and authority to add DCFS supports to a placement, such as a one-on-one aide or additional funding, to ensure the child's well-being and safety and to increase the likelihood that a placement would be able to accept them." *Id.* ¶¶ 49–50.

- The heads of DCFS's Psychiatric Hospitalization Project (collectively, the "PHP Defendants"), who were "responsible for monitoring every child held BMN and ensuring that these children were discharged from the hospital as soon as hospitalization was no longer therapeutically necessary." *Id.* ¶ 56. The PHP Defendants further "had the responsibility and authority to identify and remedy any non-compliance with DCFS procedures or other systemic issues that were impeding the provision of appropriate services to hospitalized children in DCFS care, including the lack of proper or sufficient placements." *Id.* ¶ 59.

- The DCFS Guardianship Administrators (collectively, the "Guardianship Defendants"), who "were the court-appointed temporary custodian[s] or guardian[s] for numerous children in Illinois who were placed in the temporary care of DCFS" and "had a statutory and court-ordered responsibility to those children to find them a placement outside of their homes in the least restrictive environment possible." *Id.* ¶¶ 63–64. The Guardianship Defendants "were granted broad powers and authority over those children, including the powers to grant or deny consent for medical and psychiatric treatment, educational services, visitation and other daily needs." *Id.* ¶ 64.

- DCFS itself, which was mandated under state law to "place each of the children in its care in safe and adequate placements consistent with each child's health, safety and best interests." *Id.* ¶ 30.

Plaintiffs assert that each Defendant knew "the severe risks posed to children being held BMN" and was notified when children were being held BMN, "but failed to provide appropriate placements for the children despite having the responsibility and authority to do so." *Id.* ¶¶ 125, 128.

5

## B.    Procedural History

### 1.    The *B.H.* Consent Decree

The procedural history of this case is intertwined with that of another federal case. *See Entm't USA, Inc. v. Cellular Connection, LLC*, No. 1:18-CV-317-HAB, 2019 WL 2138676, at *3 (N.D. Ind. May 16, 2019) ("A court may take judicial notice of public court documents . . . without converting a motion to dismiss to a motion for summary judgment." (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)).   In 1988, a class of plaintiffs who "have or will be in the custody of [DCFS], and who have or will be placed somewhere other than with their parents," sued DCFS seeking to enjoin practices that violated DCFS's "statutory and constitutional duties to protect children in state custody from unwarranted intrusions on their emotional and physical well-being" and to require DCFS to "provide safe and stable placements and minimally adequate medical care" and other necessities for children in state custody.   *See* Pls.' Ex., 2d Am. Compl., *B.H. v. Johnson*, 88 C 5599 (N.D. Ill. Oct. 10, 1989) ("*B.H.* Complaint") at ¶¶ 1, 3, ECF No. 118-1.   The parties in this case agree that Plaintiffs here are also members of the *B.H.* class.

The *B.H.* court held that the plaintiffs' complaint "stated a substantive due process claim to be free from unreasonable and unnecessary intrusions upon their physical and emotional well-being, while directly or indirectly in state custody, and to be provided by the state with adequate [medical care and necessities]." *B.H. v. Johnson*, 715 F. Supp. 1387, 1396 (N.D. Ill. 1989).   After that decision, the

6

plaintiffs and DCFS entered into a consent decree ("the *B.H.* consent decree"). *See* Defs.' Ex., *B.H.* Consent Decree, ECF No 106-1   Pursuant to the *B.H.* consent decree, DCFS committed to "provide[] children with at least minimally adequate care," which includes "provid[ing] that children will be timely and stably placed in appropriate living arrangements" and "promptly identify[ing] and tak[ing] steps within its power to achieve permanency for [children] in the least restrictive setting possible." *Id.* ¶¶ 4, 5(a), 5(b).  The consent decree also states: "No child will be psychiatrically hospitalized longer than is clinically necessary.  Absence of an appropriate placement shall not be deemed a basis for continuing a child's hospitalization." *Id.* ¶ 34(c).

By its terms, the *B.H.* consent decree resolves "all claims, *and only those claims*, for injunctive and declaratory relief actually set forth in the [*B.H.*] Complaint." *Id.* ¶ 74 (emphasis added).  The *B.H.* Complaint's prayer for relief sought to "[e]xpressly reserve the right of all class members to bring separate lawsuits for damages." *B.H.* Complaint at 18.

## 2. Plaintiffs' Action for Damages

Here, Plaintiffs bring Fourteenth Amendment claims under § 1983 against each of the Individual Defendants (Counts I and II), as well as claims against all Defendants, including DCFS, under Section 504 of the Rehabilitation Act (Count III) and Title II of the ADA (Count IV).  Plaintiffs seek damages—not injunctive relief—on behalf of the following subset of the *B.H.* class: "All those who are or were subjects of abuse, neglect, or dependency petitions filed in the Circuit Court

7

of Cook County, who have been placed in the care or under the guardianship of DCFS at any time on or after March 4, 2008 and who were held in a hospital for purposes of psychiatric treatment for at least a week beyond medical necessity and who were 20 years old or younger." Am. Compl. ¶ 173.

Plaintiffs filed their original complaint on December 13, 2018. *See* Compl., ECF No. 1. On Defendants' motion, the Court dismissed that complaint without prejudice after finding that it treated the Individual Defendants as an "undifferentiated mass," *Golbert v. Walker*, No. 18 C 8176, 2020 WL 1182670, at *3 (N.D. Ill. Mar. 12, 2020) (cleaned up), and engaged in impermissible "group pleading," *id.* at *4.

Plaintiffs filed this amended complaint, and now Defendants move again to dismiss the case pursuant to Rule 12(b)(6).[3] *See* Defs.' Mot. Dismiss, ECF No. 104.

## II. <u>Legal Standard</u>

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ.

---

[3] Defendants also moved to dismiss Plaintiffs' claims against the Estate of George Sheldon and the Estate of Richard Calica, two deceased former DCFS directors, pursuant to Rule 12(b)(5) for insufficient service of process; however, that argument was mooted when the Court granted Plaintiffs' motion to substitute a special representative for those Defendants under Illinois law. *See* 10/19/21 Minute Entry, ECF No. 128. The special representatives indicated that they would seek to join the pending motion to dismiss briefing, but they have not yet done so. *See* 12/18/20 Joint Status Report, ECF No. 135. To the extent that the special representatives seek to dismiss the amended complaint on other grounds after they have been served, the Court will address those arguments when and if they are made.

P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Under federal notice pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

"In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678).

### III.  Analysis

Defendants assert that Plaintiffs' § 1983 claims must be dismissed for a variety of reasons: because Plaintiffs have failed to adequately allege each Individual Defendant's personal involvement under § 1983; because the Individual Defendants are entitled to qualified immunity; and because Plaintiffs' suit is barred by the Eleventh Amendment or *Younger* abstention. Defendants also contend that Plaintiffs have failed to state a claim under the ADA and the Rehabilitation Act. And Defendants urge the Court to find that Plaintiffs' entire action is barred by *res judicata*.

## A.    *Res Judicata*

Because Defendants' *res judicata* argument could potentially dispatch the case, the Court will address it first.  Defendants contend that Plaintiffs' entire action is precluded by the *B.H.* case.  "In federal court, *res judicata*—or claim preclusion—has three elements: (1) an identity of the parties or their privies in the first and second lawsuits; (2) an identity of the cause of action; and (3) a final judgment on the merits in the first suit." *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014).  There is an identity of the cause of action if "the claims comprise the same core of operative facts." *Id.*

Plaintiffs acknowledge that a consent decree constitutes a final judgment on the merits, and that absent class members may be bound by a consent decree.  *See Martin v. Davies*, 917 F.2d 336, 339 (7th Cir. 1990) (holding that consent decree that is "continuing in nature . . . binds people who were not direct parties to it"); *Quincy Mall, Inc. v. Parisian, Inc.*, 27 F. App'x 631, 637 (7th Cir. 2001) ("It is generally true . . . [that] a consent judgment does bar further litigation of the claim presented because it constitutes a 'judgment on the merits.'").  But they counter that absent class members are not precluded from bringing subsequent suits for damages where a consent decree only resolves claims for declaratory and injunctive relief.[4]  *See Martin*, 917 F.2d at 339–40 (holding that where the prior consent decree by its terms is limited to equitable claims, "the district court's

---

[4]    On that note, Defendants cite two Illinois state cases that were deemed precluded by the *B.H.* action, but both sought only injunctive relief.  *See Katherine M. v. Ryder*, 627 N.E.2d 42 (Ill. App. Ct. 1993); *In re M.K.*, 672 N.E.2d 271 (Ill. App. Ct. 1996).

dismissal of the [damages] claims because they were governed by [the consent decree] was erroneous"); *Crowder v. Lash*, 687 F.2d 996, 1008 (7th Cir. 1982) (holding that plaintiff was not "required to adjudicate his damage claims as part of a prior class action suit" where the prior suit sought declaratory and injunctive relief only); Charles Wright & Alan Miller, 18A Fed. Prac. & Proc. Juris. § 4455.2 & n.5 (3d ed., 2020 update) (collecting cases). *Cf. Gates v. Towery*, 456 F. Supp. 2d 953, 963 (N.D. Ill. 2006), *aff'd sub nom. Gates v. City of Chi.*, 623 F.3d 389 (7th Cir. 2010) (noting that a "consent decree resolving a class action suit in which the class members sought principally declaratory or injunctive relief and in which any claim for damages is merely incidental, will bind absent class members from seeking different injunctive relief for the same claim," but "[a]bsent class members seeking non-incidental money damages may only be barred by res judicata if they have been afforded notice and an opportunity to opt out as required by Rule 23(b)(3) and (c)(2)(B).").[5]

The parties agree that by its terms, the *B.H.* Consent Decree addresses only injunctive relief—not damages. *See B.H.* Consent Decree ¶ 74. And in their reply brief, Defendants admit that the consent decree does not bar individual actions for damages. That said, Defendants nevertheless claim that the *B.H.* Consent Decree forecloses a *class action* seeking damages. But they cite no authority for this

---

[5] To the extent that a lack of notice or opportunity to opt out are required in order to avoid *res judicata*, Plaintiffs were not born when the operative *B.H.* consent decree was entered in 1997. *See* Am. Compl. ¶ 173 (seeking to certify a class of plaintiffs who were twenty years old or younger as of December 13, 2018).

proposition, and nothing in the consent decree supports it.[6]  Accordingly, the Court concludes that *res judicata* does not bar Plaintiffs' claims.

## B.    Section 1983 Claims (Counts I and II)

### 1.    Personal Involvement

Plaintiffs have sued Defendants in their individual capacities.  "[I]ndividual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'"  *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (quoting *Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir.2003)).  As such, individuals in supervisory positions are "responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly."  *Horshaw v. Casper*, 910 F.3d 1027, 1029–30 (7th Cir. 2018) (citing *Ashcroft*, 556 U.S. at 676–77; *Vance v. Rumsfeld*, 701 F.3d 193, 203–05 (7th Cir. 2012) (en banc)).  But even a supervisor may be held personally liable under § 1983 "if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent."  *Wilson v. Warren Cty.*, 830 F.3d 464, 469 (7th Cir. 2016).  In other words, an official who "knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it" will be considered personally involved in the alleged constitutional deprivation.  *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (cleaned up).

---

[6]    Whether a Rule 23(b)(3) class should be certified in this case is a question more appropriately addressed when and if Plaintiffs move for class certification.

Defendants argue that "Plaintiffs' claims of supervisory responsibility, responsibility for ensuring that an action has taken place, monitoring activity, and attending meetings are insufficient to create personal involvement or individual liability." Defs.' Reply Supp. Mot. Dismiss ("Defs.' Reply") at 3, ECF No. 130. They urge the Court to find that Plaintiffs' allegations are akin to those in *Olive v. Wexford Corp.*, where the Seventh Circuit held in an unpublished opinion that mere "knowledge of a subordinate's misconduct is not enough" for supervisory liability. 494 F. App'x 671, 673 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 677).

As Plaintiffs see it, they are seeking to hold the Individual Defendants accountable for their own conduct—not that of their subordinates. Plaintiffs allege that each Defendant had an independent authority and responsibility to prevent violations of Plaintiffs' Fourteenth Amendment rights. Compared to their original complaint, Plaintiffs' amended complaint expands on the specific authority and job duties of each group of Individual Defendants, which allegedly bestowed on each of them the responsibility and power to remediate the BMN problem. *See* Am. Compl. ¶¶ 36–69. Plaintiffs also specify the time period when each Individual Defendant held each position, *see id.* ¶¶ 38, 48, 55, 62, and they identify which Defendants were on notice that each Plaintiff was being held BMN, *id.* ¶¶ 13, 15–28.[7]

---

[7] Defendants complain that none of the Plaintiffs mention that Defendants Bishop (Acting Director for two months), Peterson (Acting Director for one month), or Spacapan (Acting Director for one month) were responsible for their BMN detentions. But given Plaintiffs' allegations that children were held BMN consistently and throughout the relevant period, *see, e.g.*, Am. Compl. ¶¶ 113, 115 (mentioning 75 children in 2014, 168 in 2015, and 800 total children from 2015 to 2017), as well as Plaintiffs' descriptions of the knowledge and

In this way, Plaintiffs' allegations more closely resemble those of the plaintiff in *Horshaw v. Casper*, 910 F.3d 1027 (7th Cir. 2018). In *Horshaw*, the prisoner-plaintiff alleged that he had written the warden a letter seeking the warden's protection from an imminent attack by a rival gang. *Id.* at 1028. The Seventh Circuit held that if the warden "made important operational decisions personally," then he could be liable for failing to transfer the plaintiff to protective custody prior to the attack. *Id.* at 1030. And the court noted that "whether a given supervisor retained some operational responsibilities" to protect the plaintiff from violations of his constitutional rights "is a question of fact." *Id.* at 1029–30. Similarly, here, Plaintiffs allege that Defendants personally failed to take steps that were within their operational responsibilities and that would have prevented the constitutional violations in question. As such, Plaintiffs have sufficiently alleged personal involvement to survive a motion to dismiss.

## 2. Qualified Immunity

The Individual Defendants next argue that they are entitled to qualified immunity. "The doctrine of qualified immunity insulates government actors from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware." *Siliven v. Indiana Dep't of Child Servs.*, 635 F.3d 921, 925 (7th Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). A qualified immunity claim

---

responsibilities of these individuals as to these issues, *id.* ¶¶ 40–43, the complaint states a plausible claim for relief against these Defendant when read "sensibly and as a whole," *see Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013).

presents two questions: "(1) whether the plaintiff's allegations make out a deprivation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Id.* at 925–26. A court may address these questions in either order. *Pearson*, 555 U.S. at 236.

Defendants' opening brief argues only (and in a mere five sentences) that Plaintiffs failed at step one: they failed to allege personal involvement, *ergo* they failed to allege a deprivation of a constitutional right. As discussed above, however, Plaintiffs' amended complaint clears this hurdle. And in any event, even if the complaint failed to allege personal involvement, it would not follow that the complaint fails to allege a constitutional deprivation, which is a distinct issue.

Defendants change tack in their reply brief, spending multiple pages addressing the "clearly established" prong of qualified immunity. It is well established that arguments raised for the first time in a reply brief are waived. *See, e.g.*, *Wonsey v. City of Chi.*, 940 F.3d 394, 398 (7th Cir. 2019) ("[A]rguments raised for the first time in a reply brief are waived"). Nonetheless, the Court will take up the merits of Defendants' argument because Plaintiffs adequately addressed both elements of qualified immunity in their response brief. *Cf. Kenya v. Cty. of Kane*, No. 16 C 4979, 2016 WL 7187264, at *3 (N.D. Ill. Dec. 12, 2016) (noting that the reason arguments raised for the first time on reply are waived is that the other party typically did not have an adequate opportunity to respond (citing *Edwards v. Honeywell, Inc.*, 960 F.2d 673, 674–75 (7th Cir. 1992))).

Defendants protest that "[e]ven if Plaintiffs' substantive due process rights were violated, the law was not so clearly established as to place the Defendants on notice that their conduct in this case was unlawful." Defs.' Reply at 9–10. When evaluating a defendant's conduct in the context of a qualified immunity claim, "the appropriate focus is 'on the objective legal reasonableness of an official's acts. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate.'" *Armstrong v. Daily*, 786 F.3d 529, 538 (7th Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)). This analysis is objective; thus, "the defendants' actual state of mind or knowledge of the law is irrelevant to whether the asserted conduct would have been legally reasonable." *Id.*

Furthermore, "a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds. . . . [b]ecause an immunity defense usually depends on the facts of the case." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001); *see also Jacobs v. City of Chi.*, 215 F.3d 758, 765 n.3 (7th Cir. 2000) (noting that "a complaint may be dismissed under Rule 12(b)(6) on qualified immunity grounds where the plaintiff asserts the violation of a broad constitutional right that had not been articulated at the time the violation is alleged to have occurred. . . . However, in many cases, the existence of qualified immunity will depend on the particular facts of a given case.") The assertion of qualified immunity in a 12(b)(6) motion is especially tricky because a "plaintiff is not required initially to plead factual allegations that anticipate and overcome a

defense of qualified immunity." *Jacobs*, 215 F.3d at 765 n.3. When considering qualified immunity at the motion to dismiss stage, the Court "consider[s] the facts, including all reasonable inferences from them, in the light most favorable to the nonmoving party." *Ewell v. Toney*, 853 F.3d 911, 918–19 (7th Cir. 2017).

In this case, the *B.H.* court held in 1989 that the plaintiffs "stated a substantive due process claim"—against the Director of DCFS in his official capacity—"to be free from unreasonable and unnecessary intrusions upon their physical and emotional well-being, while directly or indirectly in state custody." *B.H. v. Johnson*, 715 F. Supp. 1387, 1396 (N.D. Ill. 1989). And, in fact, the Seventh Circuit has noted that "*Youngberg v. Romeo* made clear . . . that the Constitution requires the responsible state officials to take steps to prevent children in state institutions from deteriorating physically or psychologically." *K.H. ex rel. Murphy v. Morgan*, 914 F.2d 846, 851 (7th Cir. 1990) (citing *Youngberg v. Romeo*, 457 U.S. 307 (1982)).

Here, the Amended Complaint describes in detail how the practice of holding children BMN unreasonably and unnecessarily intrudes on their physical and emotional well-being. And for the past nearly thirty years, DCFS has operated under the *B.H.* consent decree, which states that "[n]o child will be psychiatrically hospitalized longer than is clinically necessary." *B.H.* Consent Decree ¶ 34(c). While it is true that a consent decree may impose remedies that "exceed what is required to correct a constitutional violation," *Greene v. Cook Cty. Sheriff's Off.*, 79 F. Supp. 3d 790, 816 (N.D. Ill. 2015), at this juncture, the complaint states facts

17

sufficient to find that Defendants should have known that their alleged conduct was not "legally reasonable," *see Armstrong*, 786 F.3d at 538. Thus, Defendants are not entitled to qualified immunity at this stage.

### 3. *Younger* Abstention

Defendants next argue that the Court is required to abstain from adjudicating this case because each Plaintiff "has (or had if they are no longer youth in foster care) a case in juvenile court." Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mot. Dismiss") at 12, ECF No. 106. The Supreme Court's decision in *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny require federal courts to abstain from hearing a case where there is a related "ongoing state proceeding that is judicial in nature, involves important state interests, provides the plaintiff an adequate opportunity to raise the federal claims, and no exceptional circumstances exist." *Ewell*, 853 F.3d at 916.

The Supreme Court has admonished judges that, ordinarily, "federal courts are obliged to decide cases within the scope of federal jurisdiction," and "[a]bstention is not in order simply because a pending state-court proceeding involves the same subject matter." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). The Supreme Court has further stressed that the "[c]ircumstances fitting within the *Younger* doctrine . . . are 'exceptional'" and include "'state criminal prosecutions,' 'civil enforcement proceedings,' and 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability

18

to perform their judicial functions.'" *Id.* at 73 (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367–68 (1989)).

Although neither party describes the nature of Plaintiffs' state court cases in detail, the complaint notes that Plaintiffs "are or were subjects of abuse, neglect, or dependency petitions." Am. Compl. ¶ 173. In other words, an adult, agency, or other representative has filed a petition on behalf of each Plaintiff alleging "that the minor is abused, neglected, or dependent [on the state for care]" and "that it is in the best interests of the minor and of the public that he be adjudged a ward of the court." 705 Ill. Comp. Stat. 405/2-13. Plaintiffs argue that their cases in the Child Protection Division of Cook County do not fall into one of the three "exceptional" categories, and so *Younger* abstention is inappropriate—an assertion that Defendants do not grapple with in their briefing.

But even if the state court cases do fall within one of the three exceptional categories, *Younger* abstention is usually warranted where "federal constitutional claims . . . *call into question* ongoing state proceedings." *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 595 (7th Cir. 2007) (emphasis added); *see also Forty One News, Inc. v. Cty. of Lake*, 491 F.3d 662, 665 (7th Cir. 2007) ("*Younger* abstention is appropriate only when there is an action in state court *against the federal plaintiff*." (emphasis added)).

This is why abstention was appropriate in *Milchtein v. Chisolm*, cited by Defendants. 880 F.3d 895 (7th Cir. 2018). In that case, the plaintiff parents argued that Wisconsin's court system "either discriminated against or failed to

accommodate their views of family organization and management in the Chabad understanding of Orthodox Judaism" when the courts placed the plaintiffs' eldest two children in foster care. *Id.* at 897. Thus, the *Milchtein* plaintiffs were seeking "federal intervention" that would go to the merits of a "pending . . . litigation brought by the state to vindicate its policies." *Id.* at 898. Not so in cases involving a child's treatment after being placed in DCFS's care. *See, e.g.*, *K.H.* 914 F.2d at 847–48 (permitting a child plaintiff's § 1983 claim against DCFS employees based on her placement with abusive foster parents to proceed despite a pending juvenile-court proceeding).

Here, Plaintiffs do not challenge the merits of their underlying proceedings—*i.e.*, whether they should have been placed in DCFS care. Instead, they claim that Defendants violated their rights after that custody decision was made by the state court. Consequently, this case is not one of the few "exceptional" cases where *Younger* abstention is appropriate.[8]

### 4. Eleventh Amendment

Additionally, Defendants argue that Plaintiffs' suit, while nominally against Defendants in their individual capacities, is "in practice and effect a suit against the State of Illinois," and so is barred by the Eleventh Amendment. Defs.' Mot. Dismiss at 13. "The general rule is that [lawsuits against state officials in their individual capacity] are not barred by the [Eleventh Amendment], because the

---

[8]     The Court also notes that *Younger* abstention would not apply to the Plaintiffs whose state court cases are no longer pending because there is no "ongoing state proceeding." *See Ewell*, 853 F.3d at 916.

plaintiff is seeking damages from individuals rather than from the state treasury." *Luder v. Endicott*, 253 F.3d 1020, 1022–23 (7th Cir. 2001). "The fact that the state chooses to indemnify its employees who are sued in federal court is irrelevant" to the Eleventh Amendment analysis. *Id.*

A suit is considered "against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Id.* at 1023 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984)). But "a suit challenging the constitutionality of a state official's action is not one against the State." *Pennhurst*, 465 U.S. at 102. This is because unconstitutional action "is void and therefore does not impart to the officer any immunity from responsibility to the supreme authority of the United States," *id.* (cleaned up), and the official "is subjected in his person to the consequences of his individual conduct," *Ex parte Young*, 209 U.S. 123, 160 (1908)).

As such, a § 1983 plaintiff has two options: "either sue the official in her official capacity for injunctive relief or sue the official in her individual capacity for money damages." *Woods v. Maryville Acad.*, No. 17 C 8273, 2018 WL 6045219, at *4 (N.D. Ill. Nov. 19, 2018). Where a plaintiff "names each of the individual defendants in their individual capacity[,] [s]uch a designation is strong evidence that plaintiff does not seek recovery from the state treasury." *K.H., ex rel. Murphy*

*v. Morgan*, No. 87 C 9833, 1989 WL 105279, at *5 (N.D. Ill. Sept. 8, 1989*), aff'd in part, remanded in part on other grounds*, 914 F.2d 846 (7th Cir. 1990).

Defendants complain that Plaintiffs are raising claims that implicate "systemic failures." But Defendants do not explain precisely how that transforms Plaintiffs' suit into one against the state. It does not negate Defendants' alleged personal responsibility for their individual failures. And "Defendants have given the Court no reason to believe that a judgment against [them] would necessarily expend itself on Illinois' treasury, interfere with the public administration, or restrain Illinois from acting or compel it to act." *See Loizon v. Evans*, No. 18 C 2759, 2020 WL 5253852, at *8 (N.D. Ill. Sept. 3, 2020). As such, Plaintiffs' claims are not barred by the Eleventh Amendment.

## C. Rehabilitation Act and ADA Claims (Counts III and IV)

In addition to their § 1983 claims, Plaintiffs bring claims under the Rehabilitation Act and the ADA against all Individual Defendants, as well as DCFS itself.[9] To state a claim under Title II of the ADA, a plaintiff must allege (1) that "he is a qualified individual with a disability"; (2) that "he was denied the

---

[9] There is no Eleventh Amendment problem that prevents Plaintiffs from suing a state agency under the Rehabilitation Act or ADA. The Supreme Court has held that the sovereign immunity of states has been abrogated by the ADA insofar as Plaintiffs allege conduct that also violates the United States Constitution. *See United States v. Georgia*, 546 U.S. 151, 160 (2006) (Stevens, J., concurring) ("The Court holds that Title II of the Americans with Disabilities Act of 1990 validly abrogates state sovereign immunity at least insofar as it creates a private cause of action for damages against States for conduct that violates the Constitution." (citing *id.* at 159 (majority op.)). And "Illinois has waived its immunity from suits for damages under the Rehabilitation Act as a condition of its receipt of federal funds." *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012); *see also* Am. Compl. ¶¶ 29, 198 (alleging that DCFS is a recipient of federal funds).

benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity"; and (3) "that the denial or discrimination was by reason of his disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (cleaned up). Plaintiffs' Rehabilitation Act claim is "functionally identical." *Id.*

Defendants argue that Plaintiffs have failed to adequately plead the third element.[10] Defendants point out that when, as here, a plaintiff is seeking damages as opposed to injunctive relief, the plaintiff must establish that the alleged disability discrimination was intentional. *See Lacy v. Cook Cty.*, 897 F.3d 847, 863 (7th Cir. 2018). A plaintiff "can establish intentional discrimination in a . . . damage action [under the ADA or the Rehabilitation Act] by showing deliberate indifference." *Id*. The Seventh Circuit has adopted the two-part standard of deliberate indifference used in the majority of circuits, which requires a plaintiff to allege "both (1) 'knowledge that a harm to a federally protected right is substantially likely,' and (2) 'a failure to act upon that likelihood.'" *Id.* (quoting *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013)).

Plaintiffs have alleged in detail how Defendants knew that Plaintiffs were being held BMN, *see* Am. Compl. ¶¶ 43, 44, 52, 57, 66; how Defendants knew that holding children BMN created a substantial likelihood that their federally

---

[10] In one sentence in their opening brief that is unsupported by authority, Defendants assert that Plaintiffs also have failed to allege the second element. Defendants do not revisit this argument in their reply. As such, the Court deems it waived. *Schaefer v. Universal Scaffolding & Equip.*, LLC, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

protected rights would be violated, *see, e.g.*, *id.* ¶¶ 70–110, 128; and—as discussed above—how Defendants each personally failed to act upon that likelihood, *see, e.g.*, ¶¶ 30, 41–42, 49–50, 59, 63–64. Thus, Plaintiffs have adequately alleged intentional discrimination under the Rehabilitation Act and the ADA.

**CONCLUSION**

For the above-stated reasons, Defendants' motion to dismiss is denied in its entirety.

**IT IS SO ORDERED.**

**ENTERED: 3/18/21**

_____
**JOHN Z. LEE**
**United States District Judge**